for the appellant. Excuse me. I'd like to reserve two minutes for rebuttal. The legal issue that's presented by this appeal is about applying collateral estoppel to determine the applicability of qualified and governmental immunity. The exact issues that the district court allowed to go forward in this case have been litigated in state court and resolved against the plaintiff. The determinations are binding on the plaintiff, and they establish that there was no constitutional violation such that Ms. Wank is entitled to qualified immunity. And they also establish that Ms. Wank acted in good faith such that she's entitled to governmental immunity. And these decisions are two decisions of the Michigan Court of Appeals. One in the abuse and neglect case in 2012 and one in the criminal case against Ms. Givaldo in 2016. Now, regarding the Fourth Amendment claim. What do you think the district court missed about that? I mean, as you put it, it seems pretty much like a slam dunk. Well, as to the 2012 case, that was in the abuse and neglect case. The court affirmed that there was jurisdiction in the family court, which means that the allegations in the petition were sufficient to establish probable cause as determined at a contested hearing. The court also held that another issue was moot. And that issue was about the validity of the process that was used to enter this initial order on March 24th, 2011. They said that issue was moot because the family court had released jurisdiction over the child and to rule on that issue would have no legal effect. That issue was decided in the 2016 criminal case. So, what the district court missed is she didn't have the opportunity to review this 2016 case because it didn't exist. It came out during the pendency of this action in this court. So, the Fourth Amendment claim that the district court allowed to go forward is very narrow and it's based on the allegation that Ms. Wank knew that the report of the discontinuation of this medication was not enough to establish probable cause, but that she petitioned the court anyway because she knew that the court was entering orders without judicial review. So, she knew there wasn't probable cause, but she went and got this order anyway because she knew there was a deficient process. But the problem is, is the Michigan Court of Appeals in the 2012 case ruled exactly that. The report of the discontinuation of this medication was probable cause to believe that neglect had occurred. So, that precludes that part of the claim. The other part of the claim, the taking of this child into custody on March 24th of 2011 was authorized by a judicial warrant as established by the Michigan Court of Appeals in 2016. And in that case, the Michigan Court of Appeals considered the fact that, the argument that Ms. Gibaldo had made in the criminal case. I think it's helpful to understand what happened in the criminal case. Ms. Gibaldo was charged with eight felonies arising out of the same incident where this child was removed. Eight? Eight, Your Honor. Three counts of felonious assault, three counts of assaulting an officer, discharging a firearm in a building, and using a firearm during the discharge of a felony. And her defense, what happened was that the police and Ms. Wink came to her house to effectuate this order to remove the child from her custody. And she wouldn't... She did not take kindly to that. She wouldn't let him in the house. The police made the decision, we have this warrant, we're going to enter the house forcefully. They did that, and a firearm was discharged. A standoff ensued. I mean, you say that like in the passive voice. Who discharged the child? She shot at the cops. She shot at the cops, that's correct. I mean, the criminal case is still pending. But the point is, her argument in the criminal case was, I could resist the police entering my home because the order that they were relying on to enter was invalid. Well, you know, somewhere back in the beginning of this, it got really off the tracks. I mean, you don't contest the fact that she was told that she could take the child off this drug if she wanted to. And there is some indication that she was weaning the child off of it. And all of a sudden, they show up and want to take the child away from her. Where did it get off the tracks back there at the beginning? I mean, you don't take a child out of a home and keep her wherever she was kept for almost a year over her mother having control of which medication she's taking. This whole thing is just almost impossible to understand. I understand your concerns, Your Honor. The state court considered those issues and determined that removing this child from Risperdal was medical neglect. I think there are a lot of situations where... Did they know? Just out of curiosity, did the state court know what all the background was? I assume that they did. I don't know. I wasn't present at the probable cause hearing, but the Court of Appeals talks about a lengthy probable cause hearing occurring. I don't know the particular arguments that were presented, but I know that the opportunity to present those arguments was given. Well, I understand that that doesn't have any control. It doesn't control what we do here. But I have to tell you, I just think it's outlandish. I have a daughter who took her daughter off Risperdal at some point, and the thought that somebody would come and carry the child off and get into some kind of conflict with her that would end her up in a criminal case is just flabbergasting. I understand what you're saying, Your Honor. And I hope they're not rubber stamping these orders anymore. That's also... My understanding is that they're not. Well, the fact that the authorities were overreaching is indicated by the fact that she was given the child back and ended up with the child after all this controversy. Months later, Your Honor, after a number of hearings and adjudications in the juvenile court where it was demonstrated to the court that things had changed, the Court of Appeals in the 2012... No, nothing had changed. I mean, the kid is still off the drug. What had changed? Your Honor, if I could have a moment. In the 2012 decision, because the Department of Human Services appealed the family court's release of this child from jurisdiction on the medical neglect basis, and the Michigan Court of Appeals held, found that the respondent, Ms. Gibaldo, was seriously pursuing her obligation to provide the child medical care, that they had observed a serious bond between her and her child, that there were significant improvements in the child's general condition, and that there was no ongoing risk of medical neglect. The improvement, though, that occurred after the child was taken off the medication. That's correct, Your Honor. And that's what the mother was trying to accomplish. That's true, Your Honor. My point, though, is that the state court considered these issues, and they can't be re-litigated here in terms of whether it was appropriate to remove this child from her mother's custody. That issue has been litigated. And I understand that you have concerns about the appropriateness of that decision, but I think, regardless, it's been decided and it can't be re-litigated here because there was a full and fair opportunity to litigate. It was necessary to the judgment. Is the record clear that Ms. Wink knew that they were just stamping these orders? It's not clear. It's not clear. Well, it's not clear. Except you can look at it and tell it's a rubber stamp. She has testified that she did not know. But at this point, the Michigan Court of Appeals has reviewed that practice and said that the order that was entered in this case using that process was a valid order. And that can't be re-litigated here under the document. I understand it can't, but, I mean, we're sitting up here with our jaws dropped over whatever is going on in this little corner of the world down there with parental rights and welfare of children and rubber-stamped orders and all the rest of it. Sorry, but it just . . . I understand, Your Honor. An important point here, though, is also that Ms. Wink is a social worker. She's not a court employee. She was not involved with implementing the process that was used or anything to do with that process. She's the one that made the decision to remove the child from the home, as I understand. She's the one who made the decision to petition the court for an order to remove the child from the home. Ultimately, the court is the one who ordered the removal. With a rubber-stamped order. And, again, the process was reviewed and held to be lawful under Michigan law by the Michigan Court of Appeals. So under these circumstances where you have a binding determination of the Michigan Court of Appeals, leave denied by the Michigan Supreme Court in one case. She didn't seek leave to appeal the abuse and neglect case. Those are final decisions. They're not subject to further review. And they preclude, as a matter of law, the finding of a constitutional violation. And as to the state law claims, they also establish that she acted in good faith. The allegations that the district court held were sufficient to negate a finding of good faith were that it was alleged that Ms. Wank recklessly initiated the investigation, that she improperly petitioned the court, and that she improperly used the police to effectuate this removal. And, again, those questions are all resolved by the two cases of the Michigan Court of Appeals. Because you were there, what was your sense why the district court didn't seem to take heed of the state court findings? I think that... I mean, that's peculiar. It's kind of hard to explain, isn't it?  Yeah. Usually a federal court, if they can see a state court resolution of everything, is going to say hello. More like bye-bye. Yeah. I'm happy to try and answer any other questions you have. Thank you. Well, we have two matters here. One is the qualified immunity issue, and the other is the state governmental immunity issue. Do you have anything different to say about the state governmental immunity? Only that it turns on the issue of good faith, Your Honor, and the allegations that the district court held were sufficient to negate good faith were the same that the court held were sufficient to state a violation of the Fourth Amendment. So for the same reasons, Ms. Wank cannot have recklessly initiated an investigation or improperly petitioned the court to remove this child when the Michigan Court of Appeals has held that the basis of the investigation formed probable cause to believe that neglect had occurred and issued a judicial warrant under the Fourth Amendment to remove the child on that basis. I'm concerned about this occurring in the procedural context of a motion to reconsider. I'm not sure. You're asking, well, your brief says the error occurred in the court's failure to look at the motion for reconsideration properly, denying reconsideration of its order. I believe my intent was, and I didn't notice this in my preparation, but typically when I would take this kind of appeal, I would appeal from both the order denying the motion for reconsideration and the order denying the motion to dismiss. I'd have to look. It ought to be both, right? Yeah. Your Honor, I may have been. Order denying reconsideration, order denying her motion to dismiss. Okay. They're both there. There's something missing, but they're there. Yes, Your Honor. I may have been inartful in the way I said that. I got you. If you have any other questions, I'd be happy to try. Just out of curiosity here, most of these events took place about the removal of the child starting in 2011. I think you said that the criminal charges were unresolved at this late point in time, after all this time. Well, what's going on there? The criminal charges have a complicated and lengthy procedural history. They were initiated. It went to district court, the state district court. The state district court dismissed the charges on an issue that really isn't pertinent here. It had to do with the exclusionary rule. The circuit court, state circuit court, affirmed that. The Michigan Court of Appeals reversed. So it went back to the 36th District Court in Detroit. Again, the 36th District Court dismissed, this time on the basis that the order, the March 24th order, was invalid because of the process used to enter it. The rubber stamp. The circuit court affirmed that. The Michigan Court of Appeals reversed, finding specifically that the order was valid. Not only that it was valid, but that it was a Fourth Amendment warrant that allowed them to enter the home and take this child into custody. So that's why it's taken so long. I understand that Ms. Goodball has unfortunately had some health problems recently. I'm not sure if that has to do with it. Perhaps Mr. Dehamper can talk about that. All right, thank you. Thank you. Good morning, may it please the Court. I'm John Dehamper, and I'm here on behalf of Ms. Galbado and her daughter. If I can quickly discuss something that the panel was discussing earlier about what I've been calling the extra pleading materials in this particular case. All of the particular transcripts and petitions, all that happened post the decision to open the case to investigate, which is the lone outstanding constitutional claim. So that's all pre-petition. What's left now is the investigative process and the lack of discovery thereof to preclude a motion to dismiss at this particular stage. Now, if you look, and here's why. And why doesn't the state court, could I interrupt? Yes. This is key. I mean, why wasn't, why isn't the resolution by the state court on all these factual matters preclude the re-litigation here in federal court? Well, Judge Cook, I think it would preclude and it does preclude all of the things that Judge Michaelson dismissed. All the, you see what I'm saying? So that the PPC, and if you. What isn't precluded in as much as the counsel tells us that the state court said no problem, you know, it's fine that she took the child, it's fine that the state court, all these things were appropriate and lawful. That the failure or reckless manner to investigate, to actually open the case, never was fully litigated. Now, I don't want you to rely outside of the pleadings, but if you took a peek at the hearing transcripts that my brother counsel wants you to look at, you'll see each time defense or counsel for Ms. Galbaldo wants to bring up what's going on with, how did this thing get started with the permanency placement conference. Judge stops them each time. So there's no collateral estoppel as to that issue. It is well recognized in our circuit that the decision to open a case, if you plead the right things under Rule 8, and you plead sufficient facts, is enough to deny my brother counsel's clients qualified immunity. And so because that matter was not fully litigated, we don't have a collateral estoppel issue. You say it was not litigated in state court either. It was not. The decision that they want you to. Courts blessed it, didn't they? Courts blessed it. Courts blessed it. But at different phases. Isn't that enough? No, but here's why. They blessed it as to the police relying on the order. The order is facially valid. The police rely on the order. They go in and take the child. They're okay. Immunity applies. Judge looks to see whether or not on an MCR 3.923, whether or not the order is facially sufficient to give to somebody. That's okay. Our claim is not that. Our claim is that Mia Wink is Diago of this thing. She's got an abusive process where you have people acting in good faith, doing what they're supposed to do, believing that what they're seeing is true. And so what we're saying is there's no collateral estoppel to that because we're attacking the pretext of the facially valid order. If you look at all of the things that they attach, and we say you shouldn't, and if you do, convert this matter to one for summary judgment and give us an opportunity under 56F to supplement that with discovery. But if you do do that, you'll see that that's what's going on. The Court of Appeals for the Michigan Court of Appeals is looking at bind over, the sufficiency of the actual removal order, and they're saying that's enough to create a tribal issue at a criminal case. So that's not fully litigated. Now, let me tell you, at probable cause hearings, you don't normally get a full opportunity to cross-examine people at a probable cause hearing. The sole standard at a probable cause hearing in my state is to see whether or not there's sufficient evidence that a crime has been committed and the defendant committed the crime. That is not what we're talking about here. You have to accept what she pled is true, look at the facts under Twombly, Inkball, and say is there enough facts here of a constitutional violation? And if there is, you stop. Now we should get some discovery. And if then, after an adequate time of discovery, we can see whether or not a genuine tribal issue exists. We're not barred, we're not precluded under the rules. So that's my answer to that. I don't think you can use, now if we're looking at it under that lens, and the postulative procedures case matters. This case started out, or this motion started out, as one to dismiss and or for summary judgment. The and or, they ignored. There was nothing attached to that. Remember, when we're talking about integral to the pleadings, we're thinking about negotiable instruments, we're thinking about contracts. Documents to explain the pleadings, not to contradict them. Each document that my brother counsel wants to attach onto this pleading, including other decisions, he wants to change the meaning of the pleadings. You can't do that at this level. You can't do that under 1286. Now, if he attached documents at the outset, then the judge would have had discretion to say, you know what, I'm going to treat this as a motion for summary judgment. Or, what actually happened, counsel for Ms. Garbato said, uh-oh, and or, I see. Let me do my rule 56F affidavit and say, hey, judge, wait. We got a claim under count three that says that there's an unreasonable or reckless seizure under the Fourth Amendment, and we need time to investigate and put forth discovery on the issues of investigation and the practices that brought about the PPC. So this is akin to an abusive process claim. So everything you see that happens post-PPC is all pretext for what this particular claim is really about that's left. The one that's left is that Mia Wink set in motion a series of events that's subjected or caused, Ms. Garbato and her daughter, to lose constitutional rights. And this is done every day. The standard is that she had to be malicious. What possible theory is that this Ms. Wink, whose job is to look at these sort of things, acted so outrageously? Here, let me offer a few plausible explanations. It really doesn't matter. I guess I just need to see what was told to the court. Yeah, what was told to the court that there should have been some type of investigation, or it should have been done more thoroughly, or it was done recklessly, somebody ignored particular evidence. Because here's the thing, just for some clarity, under our state law, a health care provider must, must, must, must, have a statutory disclosure of anything that may seem to be neglect. That's an insurance policy issue. They're going to tell. So now, under the statute, we need somebody from DHS, a social worker, to take this, digest it, and figure out whether or not something's going on. I knock on the door, don't get a necessary answer. From that, I just start a PP, I just open a case. I'm done here. I'm not going to follow up. I've got materials and tools under the statute where I can find medical records if needed. I could also set something for a hearing. I don't have to run down to court, wait for, if you construe our complaint to be true, wait for no judge to actually help do the check and figure out whether or not the requirements I met. Substantively, not just on the page, right? Substantively, and figure out whether probable cause exists, a real judge, to go forward and take somebody's baby out of their house, hold them for nine months, remove their prosthetic leg, fill them up with drugs. This is outrageous. So does she have a claim under 12B6? I mean, under Rule 8, sure she does. The question is, do you allow Wayne County to subvert our rules of procedure? I was a law clerk. The first thing we learned was summary judgment. That was our docket. And Rule 56 means something. 12B6 means something. Iqbal and Twombly doesn't change Rule 8, a short and plain statement that entitles the pleader to relief. They know exactly what the claim is, which is why they're trying to prove the claim at this stage of the case. But now is not the time. Time is to figure out whether we say the claim, we do. Now let's have some discovery and figure out whether a genuine issue for a jury to decide exists. If you have any other questions for me, and all the claims, the state claim, does the same thing. They want to put forth evidence of good faith. They can't do that here because it's a 12B6 motion. Well, it's your burden to show that Ms. Wayne acted in bad faith. But again, not at this stage, Your Honor. Not at this stage, our 12B6 stage. All we have to do is allege facts plausible that even a savvy judge, even a savvy judge, if you think you're probably going to lose a summary judgment, but you win here. It's the vehicle that matters. So we can't just jump to Final Jeopardy here. 12B6 means something. And so I ask this court to affirm what the lower court did and allow this case to proceed. And if we don't submit a tribal question to a jury, I'll probably see you again. Thank you. It will be a pleasure. Thank you, Your Honor. The only point is that this isn't about facts. This is about legal determinations. And I don't know if this was part of the confusion that the district court was having or the problem below. But anything that was attached to the complaint wasn't attached to demonstrate that some fact was true. It was attached to demonstrate that these issues had been litigated and determined. What did you say was attached? The petition, three court orders, and a transcript were attached to the motion to dismiss, to my motion to dismiss, Ms. Wank's motion to dismiss. The co-defendants attached 14 or 15 exhibits that I filed a concurrence in. So everybody's trying to try to case on attachments and affidavits and things, even though it's a motion to dismiss. And this is an important point. Without those attachments, whether those items are attached to the complaint or not, these legal determinations were made in the Michigan Court of Appeals. That's the distinction I'm trying to make, is that they weren't attached to prove some fact. It's not about judicial notice. Your point is that if this got to summary judgment or if it got to trial, you'd have some basis for saying this has already been determined and why are we here, exactly? I was attempting to inform the court at the Rule 12 stage that the subject of what had already been litigated, in terms of a legal determination. Certainly didn't save any time. Here we are. Thank you, Your Honors. Thank you.